**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01873-GPG-KAS

JACOB KNIGHT,
JACK CRIBBS,
and JASON DOHSE, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

WATA, INC.,
and COLLECTORS UNIVERSE, INC.,

Defendants.

---

**DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

---

Defendant Wata, Inc. and Collectors Universe, Inc. (collectively, "Defendants"), by and through their undersigned counsel, hereby assert this Answer and Defenses to Plaintiffs' Third Amended Class Action Complaint ("TAC"), paragraph by corresponding paragraph, as follows:

## I. ANSWER

1. Paragraph 1 merely lists the claims alleged in the TAC. Defendants deny that any of those claims has been properly or adequately alleged. Defendants also deny that there could be any liability for the referenced causes of action.

2. Defendants are without sufficient information to admit or deny the allegations in Paragraph 2. Those allegations are therefore denied.

3. Defendants deny the allegations in Paragraph 3.

4. Defendants admit that the three named Plaintiffs are customers who paid for video game encapsulation and grading services from Wata. Defendants deny the remaining allegations in Paragraph 4.

5. Defendants deny that Plaintiffs are similarly situated to absent class members. Defendants admit that this lawsuit was filed against Wata and Collectors Universe. Defendants deny any remaining allegations in Paragraph 5.

6. Defendants object to the definition of the terms "Defendants," "Wata," "CU," and "Collectors Universe" on the grounds that those terms seek to impose obligations beyond those required by the Federal Rules of Civil Procedure and to the extent it purports to include individuals or distinct corporate entities that are not parties to this action. Defendants deny the allegations throughout the TAC to the extent they attempt to assign liability for other entities or individuals by simply using the terms "Wata," "CU, or "Collectors Universe."

7. Defendants deny that there could be any liability under the RICO act. For purposes of the RICO claim alone, however, Defendants do not contest the existence of federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964 at this time due to the nature of the allegations in the TAC. Defendants deny any remaining allegations in Paragraph 7.

8. For purposes of this action only, Defendants do not contest the Court's subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) (CAFA) or supplemental jurisdiction under 28 U.S.C. § 1367 at this time due to the nature of the allegations of the TAC. Defendants deny any remaining allegations in Paragraph 8.

9. Defendants admit that Wata is a Colorado corporation that consented to

jurisdiction in Colorado in the Wata Services Agreement. Defendants also admit that Collectors Universe consented to personal jurisdiction in Colorado by joining a motion to transfer to this Court. For purposes of this action only, Defendants do not contest that they are subject to personal jurisdiction in this Court due to the nature of the allegations in the TAC. Defendants note, however, that the allegations concerning jurisdictional contacts with California are now irrelevant for purposes of personal jurisdiction, as this case is in Colorado. Nevertheless, Defendants admit that, in July 2021, Collectors Universe, whose principal place of business is in Santa Ana, California, purchased Wata. Defendants also admit that Wata's operations were relocated to Santa Ana, California, by the end of Spring 2022 and thereafter Wata's headquarters were in Santa Ana, California. Defendants admit that Wata conducted business online, which was accessible across the country (and not just in California). For many transactions, however, none of the events relevant to the transaction or claims occurred in California at all. Any remaining allegations in Paragraph 9 involve an irrelevant legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny any remaining allegations in Paragraph 9.

10. For purposes of this action only, Defendants do not contest that venue is proper in this Court. The allegations in Paragraph 10 relate to the Central District of California and thus involve an irrelevant legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 10.

11. Defendants admit the allegations in Paragraph 11.

12. Defendants admit the allegations in Paragraph 12.

13. Defendants admit the allegations in Paragraph 13.

14. Defendants admit the allegations in Paragraph 14.

15. Defendants admit that some of Wata's operations were occurring in Santa Ana, California, in early 2022. Defendants admit that, as of the filing of the initial Complaint, there was no Statement of Information for Wata on file with the California Secretary of State. Defendants deny any remaining allegations in Paragraph 15.

16. Defendants admit the allegations in Paragraph 16.

17. Defendants admit that, for some customers, retro video game collecting is a hobby. Defendants admit that Paragraph 17 accurately describes certain physical media that retro video games can take, as well as various home console systems that facilitate the playing of such video games. Defendants admit that retro video games have become collectibles and that comic books, sports trading cards, coins, and postage stamps are other examples of collectibles. Defendants deny any allegations remaining in Paragraph 17.

18. Defendants admit the allegations in Paragraph 18.

19. Defendants deny the allegations to the extent that they suggest that companies that provide online price trackers accurately or comprehensively accumulate sales data of video games from eBay or other sources. Defendants admit the remaining allegations in Paragraph 19.

20. Defendants admit the allegations in Paragraph 20.

21. Defendants admit that Deniz Kahn was Co-Founder of Wata and its President for a period of time. Defendants also admit that Kenneth Thrower was Co-Founder of Wata and its Chief Grader for a period of time. Defendants deny any remaining allegations in Paragraph

21.

22. Defendants admit that Wata makes money by providing grading and encapsulation services. Defendants also admit that pricing for certain aspects of Wata's services depend on a number of factors, not simply how quickly the customer wants the game returned. For a more complete description of Wata's pricing, see Wata's response to Interrogatory No. 14. Defendants deny any remaining allegations in Paragraph 22.

23. Defendants admit the allegations in Paragraph 23.

24. Defendants admit that Wata's ordinary grading and encapsulation process includes an individual making a purchase through the Wata website, shipping a game to Wata, Wata inspecting and grading the game, and Wata encapsulating the game. Defendants deny that the remaining allegations in Paragraph 24 accurately describe the entirety of Wata's grading and encapsulating workflow, which also changed in various ways over time.

25. Defendants admit that Wata sells grading services and that Wata encapsulates games as part of that service. The remaining allegations in Paragraph 25 involve legal conclusions to which no answers are required. To the extent an answer is required, Defendants deny the remaining allegations in Paragraph 25.

26. Defendants admit that Wata offers different prices for grading services depending on the service tier ordered and estimated turnaround time—*i.e.*, faster service costs more money than slower service. Defendants further admit that for certain submissions, Wata's pricing may involve charging a percentage of the game's market value, as declared by the customer. Defendants also admit that prices for Wata's services have changed over time. Defendants deny the remaining allegations in Paragraph 26.

27. Defendants deny the allegations in Paragraph 27.

28. Defendants admit that the estimated turnaround times for certain service tiers have changed several times since 2018. Defendants also admit that the estimated turnaround time for the Speed Run service tier was thirty-five (35) business days from May 1, 2021–August 23, 2021. Defendants deny the remaining allegations in Paragraph 28.

29. Defendants admit that, in 2018, Wata was a new company. Defendants also admit that, as of April 2018, James Halperin was on the Advisory Board of Wata. Defendants are without sufficient information to admit or deny the allegations related to Heritage Auctions. Those allegations are therefore denied. Defendants deny the remaining allegations in Paragraph 29.

30. Defendants admit that in September 2018 Heritage Auctions decided to offer only Wata-graded video games in its auctions. Defendants also admit that Heritage Auctions decided to also offer games graded by other services in 2021. Defendants deny the remaining allegations in Paragraph 30.

31. Defendants admit that Heritage Auctions makes money through fees for its auction services, including by charging a "buyer's premium." Otherwise, Wata is without sufficient information to admit or deny the allegations in Paragraph 31. Those allegations are therefore denied.

32. Defendants admit that they are aware of the sale and purchase of the referenced Super Mario Bros. game that occurred in February of 2019. Defendants also admit that James Halperin, Richard Lecce, and Zac Gieg were purchasers of that game and that the sale received

some press coverage. Defendants deny the remaining allegations in Paragraph 32.

33. Defendants admit that the referenced Super Mario Bros. game was graded by Wata at the request of its owner and that the game had previously been graded by VGA. Defendants also admit that, after removing the game from its VGA case, Wata graded the game as a 9.4 for condition of the box and an A++ for the seal on the game (which is the highest rating on the seal-quality scale). Defendants also admit that Wata showcased the game publicly at retro video game events and conventions. Defendants deny the remaining allegations in Paragraph 33.

34. Defendants admit that, at the time the referenced Super Mario Bros. game was graded by Wata, and at all times before and after that, Deniz Khan and Kenneth Thrower generally had an interest in Wata being accepted as a legitimate video game grading company. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 34. Those allegations are therefore denied.

35. Defendants admit that Heritage Auctions issued an online announcement after the purchase of the referenced Super Mario Bros. game, which stated, among other things, the price that the purchasers agreed to pay and that the game might one day appear in a Heritage auction in the future. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 35. Those allegations are therefore denied.

36. Defendants admit that Paragraph 36 selectively quotes from excerpts of the online announcement by Heritage Auctions referenced in this paragraph. As a purported summary of a longer and more complete statement, this selective quotation is necessarily incomplete. Defendants deny any remaining allegations in Paragraph 36.

37. Defendants admit that Paragraph 37 quotes from excerpts of the online announcement by Heritage Auctions referenced in this paragraph. Defendants deny any remaining allegations in Paragraph 37.

38. Defendants admit the existence of the referenced Ars Technica article. That article speaks for itself. Defendants deny the remaining allegations in Paragraph 38.

39. Defendants admit that Paragraph 39 selectively quotes from excerpts of Ars Technica articles. As a purported summary of a longer and more complete statement, this selective quotation is necessarily incomplete. Defendants deny any remaining allegations in Paragraph 39.

40. Defendants admit that Richard Lecce appeared on Season 17, Episode 5 of the television show Pawn Stars, entitled "Pawn v. Ferrari," with the referenced Super Mario Bros. game. Defendants also admit that Pawn Stars is a reality show which highlights the operations of a Las Vegas pawn shop, and that Lecce was shown attempting to sell the Super Mario Bros. game to the pawn shop for $1 million. Defendants also admit that the proprietor of the pawn shop was shown indicating his intent to consult with an expert regarding the value of the game and that Deniz Kahn was brought in to serve as the expert. Defendants also admit that Kahn and Lecce knew one another before the filming of the episode. Defendants deny the remaining allegations in Paragraph 40.

41. Defendants admit that parts of statements made by Deniz Kahn were included in the November 2019 Pawn Stars episode and that this paragraph selectively quotes from statements that were aired on that episode. As a purported summary of a longer and more complete statement, this selective quotation is necessarily incomplete. Defendants deny any

remaining allegations in Paragraph 41.

42. Defendants admit that parts of statements made by Deniz Kahn and the pawn shop owner were included in the November 2019 Pawn Stars episode and that this paragraph selectively quotes from statements that were aired on that episode. As a purported summary of a longer and more complete statement, this selective quotation is necessarily incomplete. Defendants deny the remaining allegations in Paragraph 42.

43. Defendants admit that no agreement to purchase the Super Mario Bros. game was reached during Season 17, Episode 5 of Pawn Stars. Defendants are without sufficient information to admit or deny the allegations in the final sentence of this paragraph. Those allegations are therefore denied. Defendants deny any remaining allegations in Paragraph 43.

44. Defendants deny that the market for retro video games responded to the Pawn Stars episode by running up the price of the Super Mario Bros. game and games in general. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 44. Those allegations are therefore denied.

45. Defendants are without sufficient information to admit or deny the allegations in Paragraph 45. Those allegations are therefore denied.

46. Defendants are without sufficient information to admit or deny the allegations in Paragraph 46. Those allegations are therefore denied.

47. Defendants are without sufficient information to admit or deny the allegations in Paragraph 47, including what unnamed "collectors" may have been thinking at some unspecified time about unspecified video game sales. Those allegations are therefore denied.

Defendants also cannot admit or deny whether population reports were available "[a]t the time," because no time is specified. That allegation is therefore denied as well.

48. Defendants object to Paragraph 48 as vague and ambiguous because it does not specify the time period related to the allegations, so Defendants cannot admit or deny its allegations. Those allegations are therefore denied. Regardless of the time, Defendants also deny that prices skyrocketed "across the board" as they understand that phrase.

49. Defendants are without sufficient information to admit or deny the allegations in Paragraph 49. Those allegations are therefore denied.

50. Defendants deny the allegations in Paragraph 50.

51. Defendants are without sufficient information to admit or deny allegations regarding the intentions, thought processes, or knowledge of unidentified "video game collectors." Those allegations are therefore denied. Defendants deny any remaining allegations in Paragraph 51.

52. Defendants admit that, in July 2021, Collectors Universe purchased Wata. Defendants also admit that Heritage Auctions held Video Game Signature Auctions in 2021 and that those auctions featured Wata-graded games. Defendants deny the remaining allegations in Paragraph 52.

53. Defendants admit the existence of the YouTube video by Karl Jobst and online article by Seth Abramson referenced in Paragraph 53. Defendants deny the remaining allegations in Paragraph 53.

54. Defendants are without sufficient information to admit or deny how unidentified

customers reacted to internet videos and articles, as set forth in Paragraph 54. Those allegations are therefore denied.

55. Defendants admit that prices for certain retro video games fell after publication of the referenced YouTube video by Karl Jobst and online article by Seth Abramson. Defendants also admit that they are aware of the sales of Wata-graded Super Mario 64 games. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 55. Those allegations are therefore denied.

56. Defendants admit that Wata experienced a backlog of orders for certain periods of time, which were caused in part by various supply chain issues. Defendants deny the remaining allegations in Paragraph 56.

57. Defendants admit the allegations in Paragraph 57.

58. Defendants admit that at the time Wata was acquired by Collectors Universe, some customers' games were in Wata's possession. Defendants also admit that Wata moved some of the games in its possession to California and that some orders were completed in Colorado while others were completed in California. Defendants deny the remaining allegations in Paragraph 58.

59. Paragraph 59 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 59.

60. Defendants admit that Collectors Universe purchased Wata on July 1, 2021, and that all Wata shares were sold to Collectors Universe. Defendants deny that there is no parent/subsidiary relationship between Collectors Universe and Wata and that Wata no longer

exists as an entity. The remaining allegations in Paragraph 60 contain legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the remaining allegations in Paragraph 60.

61. Paragraph 61 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 61.

62. Defendants admit that Collectors Universe purchased Wata on July 1, 2021, and that Wata became a wholly owned subsidiary of Collectors Universe. Defendants deny the remaining allegations in Paragraph 62.

63. Defendants deny the allegations in Paragraph 63.

64. Defendants admit the allegations in Paragraph 64.

65. Defendants admit that the last meeting of Wata's board of directors occurred shortly before or just after the July 1, 2021 sale to Collectors Universe. Defendants deny the remaining allegations in Paragraph 65.

66. Defendants admit that Wata's finances, revenue, and accounting today rolls up to Collectors Universe on a consolidated basis. Defendants deny the remaining allegations in Paragraph 66.

67. Defendants admit that Wata is a Colorado corporation and that, after it was purchased by Collectors Universe, Wata moved its operations to Collectors Universe's headquarters in Santa Ana, California. Defendants also admit that Wata does not pay rent to Collectors Universe. Defendants deny the remaining allegations in Paragraph 67.

68. Defendants admit that some former Wata employees became Collectors

Universe employees as of the date of Collectors Universe's purchase of Wata. Defendants also admit that currently Collectors Universe employees provide services on behalf of Wata and that those employees are on Collectors Universe's payroll. Defendants deny the remaining allegations in Paragraph 68.

69. Defendants admit that Wata moved its headquarters after (but not immediately after) the July 2021 acquisition. Defendants also admit that Wata has not registered as a foreign corporation with the California Secretary of State, obtained a seller's permit in California, filed a Statement of Information with California, or made franchise tax reports or payments to the California Tax Board. The remaining allegations in Paragraph 69 contain legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the remaining allegations in Paragraph 69.

70. Defendants admit that the current director of Wata is Nat Turner. Defendants also admit that Deniz Kahn and Ryan Sabga were previously on the board of directors of Wata. Defendants also admit that Ryan Sabga and Deniz Kahn became employees of Collectors Universe. Defendants deny the remaining allegations in Paragraph 70.

71. Defendants admit that Wata's finances, revenue, and accounting today rolls up to Collectors Universe on a consolidated basis. Defendants also admit that Collectors Universe employees manage Wata's operations. Defendants deny the remaining allegations in Paragraph 71.

72. Defendants admit that Wata no longer has any employees on its own payroll, that Deniz Kahn used to be a Wata employee prior to the sale, and that Kahn is no longer a Wata officer or employee today. Defendants cannot discern what hiring advertisements

Paragraph 72 is referencing, so Defendants are without sufficient information to admit or deny that allegation, and on that basis, the allegation is therefore denied. Defendants deny any remaining allegations in Paragraph 72.

73. Defendants deny the allegations in Paragraph 73.

74. Defendants admit that the "Careers" portion of Collectors Universe's website lists Wata next to other "Divisions" of the business. Defendants deny the remaining allegations in Paragraph 74, including the allegation that Wata is not a subsidiary of Collectors Universe.

75. Defendants deny the allegations in Paragraph 75.

76. Defendants deny the allegations in Paragraph 76.

77. Defendants deny the allegations in Paragraph 77.

78. Defendants deny the allegations in Paragraph 78.

79. Defendants deny the allegations in Paragraph 79.

80. Defendants deny the allegations in Paragraph 80.

81. Defendants deny the allegations in Paragraph 81, including the allegation that Wata is not a subsidiary of Collectors Universe.

82. Defendants admit that Karl Jobst and Seth Abramson published reports online related to Wata. Defendants also admit that a collection of video games owned by Wata investor and former director Jeff Meyer was designated the "Carolina Collection" in light of the origin of that collection. Defendants deny the remaining allegations in Paragraph 82.

83. Defendants admit that Dain Anderson was identified as an "Executive Officer" of the company for purposes of a July 2017 SEC filing even though Anderson was no longer

identified as such for purposes of later SEC filings, including one dated December 2017, and he never had any formal role or responsibilities at Wata and never received any salary or payment from Wata. Defendants also admit that Anderson at one time had a video game collection, including games that had been graded by VGA. Defendants deny any remaining allegations in Paragraph 83.

84. Defendants admit that, in July 2018, Jeff Meyer was listed in SEC filings as Director of Wata. Defendants are without sufficient information to admit or deny how Meyer "identified himself" at some unstated time and therefore deny that allegation.

85. Defendants admit that, in May 2019, Jeff Meyer held a passive financial interest in Wata and was a member of Wata's board of directors. Defendants also admit that the collection of video games that Meyer purchased from Dain Anderson was designated the "Carolina Collection" in light of the origin of that collection. Defendants also admit that games from that collection that were previously in VGA encapsulations were re-graded by Wata. Defendants deny any remaining allegations in Paragraph 85.

86. Defendants admit that on July 1, 2019, a message from Deniz Kahn was published on the Wata website about the Carolina Collection. Defendants also admit that, in that message, Kahn noted the impressive nature of the games in the collection and identified Dain Anderson as the seller of the games and Jeff Meyer as the buyer, and noted that Anderson was running a website call "NintendoAge," and that Meyer was the founder of GoCollect.com, a seasoned investor in golden age comics, and "liv[ed] in neighboring cities" with Dain Anderson. As a purported summary of a longer and more complete statement, the selective quotations are necessarily incomplete. Defendants deny the remaining allegations in Paragraph

86.

87. Defendants are without sufficient information to admit or deny the allegations in Paragraph 87. Those allegations are therefore denied.

88. Defendants admit that Mark Haspel was identified in a July 2018 SEC filing as a "Promoter" of Wata. Defendants deny the allegations in the last sentence of this paragraph. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 88 that do not relate to Wata. Those allegations are therefore also denied.

89. Defendants deny the allegations in Paragraph 89.

90. Defendants deny the allegations in Paragraph 90.

91. Defendants admit the allegations in Paragraph 91.

92. Defendants deny the allegations in Paragraph 92.

93. Defendants admit that Jacob Knight shipped his games to Wata's Colorado facility and that the games were scanned into Wata's system on June 15, 2020. Defendants are without sufficient information to admit or deny whether his shipment was "prompt[]," and on that basis, the allegation is denied.

94. Defendants admit the allegations in Paragraph 94.

95. Defendants admit that, in January 2021, Jacob Knight sent communications to Wata regarding his order and that a new Wata customer service representative mistakenly informed him that the estimated turnaround time for his order was 170 business days. Defendants also admit that the same customer service representative estimated that Knight's games would be graded by February or March of 2021. Defendants deny the remaining

allegations in Paragraph 95.

96. Defendants admit that Jacob Knight's game had not been returned by April of 2021. Defendants also admit that Wata informed Knight that Wata was behind demand for services and provided Knight with the option to either accept a partial refund of his order or to upgrade to a faster turnaround time to expedite his order. Defendants deny the remaining allegations in Paragraph 96.

97. Defendants admit that, on March 3, 2022, Knight received notice that his games had been shipped. Defendants deny the remaining allegations in Paragraph 97.

98. Defendants deny the allegations in Paragraph 98.

99. Defendants admit the allegations in Paragraph 99.

100. Defendants admit that, on April 7, 2021, Jack Cribbs placed an order for grading of two (2) games at the Speed Run service tier, which at that time had an estimated turnaround time of fifteen (15) business days. Defendants also admit that Cribbs's games were scanned into Wata's system on April 12, 2021. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 100. Those allegations are therefore denied.

101. Defendants deny the allegations in Paragraph 101.

102. Defendants admit the allegations in Paragraph 102.

103. Defendants admit the allegations in Paragraph 103.

104. Defendants admit that, on May 31, 2021, Wata responded to Jack Cribbs's request for a status update informing him that the estimated turnaround time for the Speed Run service tier was then thirty-five (35) business days. Defendants also admit that 35 business days

from April 12, 2021, was June 1, 2021. Defendants deny the remaining allegations in Paragraph 104.

105. Defendants admit the allegations in Paragraph 105.

106. Defendants admit the allegations in Paragraph 106.

107. Defendants admit the allegations in Paragraph 107.

108. Defendants admit that, on July 1, 2021, Wata responded to Jack Cribbs's request for a status update informing him that it would take "15 days for labeling and encapsulation." Defendants deny the remaining allegations in Paragraph 108.

109. Defendants admit the allegations in Paragraph 109.

110. Defendants admit the allegations in Paragraph 110.

111. Defendants admit that Wata told Jack Cribbs on July 18, 2021, that there were issues with DVD style cases, and that Cribbs and Wata did not discuss the cancellation or refunding of his order in that communication.

112. Defendants admit the allegations in Paragraph 112.

113. Defendants admit that, on September 28, 2021, Wata responded to Jack Cribbs's request for a status update informing him that the company missed its September 8, 2021 "goal" to have games out. Defendants deny the remaining allegations in Paragraph 113.

114. Defendants admit the allegations in Paragraph 114.

115. Defendants admit the allegations in Paragraph 115.

116. Defendants admit the allegations in Paragraph 116.

117. Defendants admit the allegations in Paragraph 117.

118. Defendants admit that the initial estimated turnaround time for Jack Cribbs order was fifteen (15) business days. Defendants admit that Cribbs received his order seven (7) months after it was scanned into Wata's system. Defendants deny the remaining allegations in Paragraph 118.

119. Defendants deny the allegations in Paragraph 119.

120. Defendants admit the allegations in Paragraph 120.

121. Defendants admit that, on December 4, 2021, Jason Dohse placed an order with Wata for grading of five (5) games at the Speed Run service tier. Defendants also admit that the estimated turnaround time for Dohse's order was forty-five (45) business days. Defendants deny the remaining allegations in Paragraph 121.

122. Defendants admit that Jason Dohse's games were scanned into Wata's system on December 8, 2021. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 122, and on that basis, those allegations are denied.

123. Defendants admit the allegations in Paragraph 123.

124. Defendants admit the allegations in Paragraph 124.

125. Defendants admit that Wata responded to Jason Dohse and stated, in part, that it was "running behind on our business day estimates. Defendants also admit that Dohse and Wata did not discuss the cancellation or refunding of his order in that communication.

126. Defendants admit the allegations in Paragraph 126.

127. Defendants admit the allegations in Paragraph 127.

128. Defendants admit the allegations in Paragraph 128.

129. Defendants admit that on March 15, 2022, Wata responded to Jason Dohse's request for a status update, stating in part that Dohse's order was in "post-grading" where "Speedrun orders spend the bulk of their processing time." Defendants also admit that Wata informed Dohse that his order would require additional time to complete. Defendants deny the remaining allegations in Paragraph 129.

130. Defendants admit that the statements referenced in Paragraph 130 were made by Jason Dohse and appear in the email from Dohse to Wata dated March 15, 2022. Defendants are without sufficient information to admit or deny the remaining allegations in Paragraph 130. Those allegations are therefore denied.

131. Defendants admit that Wata informed Jason Dohse in an email on March 15, 2022 that Speed Run orders were currently taking 75+ business days. Defendants deny the remaining allegations in the Paragraph 131.

132. Defendants admit that the quoted language in Paragraph 132 appeared in an email from Jason Dohse to Wata dated March 15, 2022. Defendants deny any remaining allegations in Paragraph 132.

133. Defendants admit the allegations in Paragraph 133.

134. Defendants admit that the estimated turnaround time for Jason Dohse's order was forty-five (45) business days. Defendants also admit that Dohse's order was returned after seventy-six (76) business days. Defendants deny the remaining allegations in Paragraph 134.

135. Defendants acknowledge that Plaintiffs purport to bring this action as a class

action pursuant to Federal Rule of Civil Procedure 23(a) and (b) but deny that Plaintiffs can certify a class or obtain relief.

136. Defendants deny that Plaintiffs have properly identified a certifiable class for any—much less, all—of their causes of action.

137. Paragraph 137 does not contain allegations of any kind. To the extent a response is required, the allegations are denied.

138. Defendants deny that Plaintiffs have stated an adequate class, so there is no "class period," and the allegations in Paragraph 138 are denied.

139. Defendants deny the allegations in Paragraph 139.

140. Defendants admit that Wata released population reports for certain categories of games that had had been graded by Wata. Defendants also admit that Wata released a population report on its website of sealed Nintendo Entertainment Systems (NES) games graded by the company, and that the report did not include all games graded by Wata. Defendants deny the remaining allegations in Paragraph 140.

141. Defendants deny the allegations in Paragraph 141.

142. Defendants admit that Wata maintained a website where customers could place orders for grading and encapsulation services at various service tiers. Defendants admit that customers shipped games to Wata in Colorado or California for grading and encapsulation. Defendants admit that Wata stored the games for purposes of providing grading and encapsulation services and returned the games to the customers once those services were completed. Defendants deny the remaining allegations in Paragraph 142.

143. Defendants deny the allegations in Paragraph 143.

144. Defendants deny the allegations in Paragraph 144.

145. Defendants deny the allegations in Paragraph 145.

146. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

147. Defendants deny the allegations in Paragraph 147.

148. Defendants deny the allegations in Paragraph 148.

149. Defendants deny the allegations in Paragraph 149.

150. Defendants deny the allegations in Paragraph 150.

151. Defendants deny the allegations in Paragraph 151.

152. Defendants deny the allegations in Paragraph 152.

153. Defendants deny the allegations in Paragraph 153.

154. Defendants deny the allegations in Paragraph 154.

155. Defendants deny the allegations in Paragraph 155.

156. Defendants deny the allegations in Paragraph 156.

157. Defendants deny the allegations in Paragraph 157.

158. Defendants deny the allegations in Paragraph 158.

159. Defendants deny the allegations in Paragraph 159.

160. Defendants deny the allegations in Paragraph 160.

161. Defendants deny the allegations in Paragraph 161.

162. Defendants deny the allegations in Paragraph 162.

163. Defendants deny the allegations in Paragraph 163.

164. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

165. Defendants deny the allegations in Paragraph 165.

166. Defendants deny the allegations in Paragraph 166.

167. Defendants deny the allegations in Paragraph 167.

168. Defendants deny the allegations in Paragraph 168.

169. Defendants deny the allegations in Paragraph 169.

170. Defendants deny the allegations in Paragraph 170.

171. Defendants admit that Plaintiffs entered into a contract with Wata by accepting the Wata Service Agreement. Defendants deny the remaining allegations in Paragraph 171.

172. Defendants admit that Wata's website displayed estimated turnaround times and costs associated with each service tier. Defendants deny the remaining allegations in Paragraph 172.

173. Defendants deny the allegations in Paragraph 173.

174. Defendants deny the allegations in Paragraph 174.

175. Defendants deny the allegations in Paragraph 175.

176. Defendants deny the allegations in Paragraph 176.

177. Defendants deny the allegations in Paragraph 177.

178. Defendants deny the allegations in Paragraph 178.

179. Defendants deny the allegations in Paragraph 179.

180. Defendants deny the allegations in Paragraph 180.

181. Defendants deny the allegations in Paragraph 181.

182. Defendants deny the allegations in Paragraph 182.

183. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

184. Defendants deny the allegations in Paragraph 184.

185. Defendants deny the allegations in Paragraph 185.

186. Defendants deny the allegations in Paragraph 186.

187. Defendants admit that Wata's website displayed estimated turnaround times and costs associated with each service tier. Defendants deny the remaining allegations in Paragraph 187.

188. Defendants deny the allegations in Paragraph 188.

189. Defendants deny the allegations in Paragraph 189.

190. Defendants deny the allegations in Paragraph 190.

191. Defendants deny the allegations in Paragraph 191.

192. Defendants deny the allegations in Paragraph 192.

193. Defendants deny the allegations in Paragraph 193.

194. Defendants incorporate their responses to all prior paragraphs as though such

responses were fully set forth herein.

195. Defendants deny the allegations in Paragraph 195.

196. Defendants deny the allegations in Paragraph 196.

197. Defendants deny the allegations in Paragraph 197.

198. Defendants deny the allegations in Paragraph 198.

199. Defendants deny the allegations in Paragraph 199.

200. Defendants deny the allegations in Paragraph 200.

201. Defendants deny the allegations in Paragraph 201.

202. Defendants deny the allegations in Paragraph 202.

203. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

204. Defendants deny the allegations in Paragraph 204.

205. Defendants deny the allegations in Paragraph 205.

206. Defendants deny the allegations in Paragraph 206.

207. Defendants deny the allegations in Paragraph 207.

208. Defendants deny the allegations in Paragraph 208.

209. Defendants deny the allegations in Paragraph 209.

210. Defendants deny the allegations in Paragraph 210.

211. Defendants deny the allegations in Paragraph 211.

212. Defendants incorporate their responses to all prior paragraphs as though such

responses were fully set forth herein.

213. Defendants deny the allegations in Paragraph 213, to the extent the description of the CLRA suggests any violation of the same by Wata.

214. Defendants admit that Wata performs services and encapsulates games as part of its services. Defendants deny any remaining allegations in Paragraph 214.

215. Defendants deny the allegations in Paragraph 215.

216. Defendants deny the allegations in Paragraph 216.

217. Defendants admit that Plaintiffs entered into a contract in the form of the Wata Services Agreement and conducted a transaction with Wata. Defendants deny the allegations remaining in Paragraph 217.

218. Defendants deny the allegations in Paragraph 218.

219. Defendants deny the allegations in Paragraph 219.

220. Defendants admit that Wata publicly addressed service delays on its website, in emails, and in social media posts. Defendants deny the remaining allegations in Paragraph 220.

221. Defendants deny the allegations in Paragraph 221.

222. Defendants deny the allegations in Paragraph 222.

223. Defendants deny the allegations in Paragraph 223.

224. Defendants deny the allegations in Paragraph 224.

225. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

226. Defendants admit that Wata entered into contracts with Plaintiffs and Wata's customers in the form of the Wata Services Agreement. Defendants deny the remaining allegations in Paragraph 226.

227. Defendants deny the allegations in Paragraph 227.

228. Defendants deny the allegations in Paragraph 228.

229. Defendants admit that Plaintiffs paid Wata for grading and encapsulation services and shipped their games to Wata. Defendants deny the remaining allegations in Paragraph 229.

230. Defendants deny the allegations in Paragraph 230.

231. Defendants deny the allegations in Paragraph 231.

232. Defendants deny the allegations in Paragraph 232.

233. Defendants incorporate their responses to all prior paragraphs as though such responses were fully set forth herein.

234. Defendants deny the allegations in Paragraph 234, to the extent they are meant to state that Wata breached a duty to act in good faith or deal fairly.

235. Defendants deny the allegations in Paragraph 235, to the extent they are meant to state that Wata breached a duty to act in good faith or deal fairly.

236. Defendants deny the allegations in Paragraph 236.

237. Defendants deny the allegations in Paragraph 237.

238. Defendants incorporate their responses to all prior paragraphs as though such

responses were fully set forth herein.

239. Defendants deny the allegations in Paragraph 239, to the extent they are meant to state that Wata violated the Colorado Consumer Protection Act.

240. Defendants deny the allegations in Paragraph 240.

241. Defendants deny the allegations in Paragraph 241.

242. Defendants deny the allegations in Paragraph 242.

243. Defendants deny the allegations in Paragraph 243.

244. Defendants deny the allegations in Paragraph 244.

245. Defendants deny the allegations in Paragraph 245.

In response to the Request for Relief, Defendants deny that Plaintiffs are entitled to any of the relief requested, under any of the causes of action asserted.

## II. AFFIRMATIVE AND OTHER DEFENSES

In asserting these defenses, Defendants do not assume the burden of proof on any issue as to which the burden properly falls on Plaintiffs.

1. The TAC and all counts thereof fail to state a claim upon which relief can be granted.

2. Plaintiffs' claims, and/or the claims of the putative class members, are barred in whole or in part based on the expiration of the applicable statute of limitations or repose.

3. Plaintiffs' claims under California law, and/or the claims of the putative class members, are barred in whole or in part because Plaintiffs' claims are governed by Colorado law pursuant to the governing contract.

4. Plaintiffs Jack Cribbs's and Jason Dohse's claims under California law, and/or the claims of the putative class members, are barred, in whole or in part, for lack of standing to assert the causes of action in the TAC.

5. Plaintiffs' California Consumer Legal Remedies Act (CLRA) claims, and/or the claims of the putative class members, are barred, in whole or in part, because Plaintiffs submitted their games for grading in order to resell them, not retain them for personal, family, or household use.

6. Plaintiffs' claims, and/or the claims of the putative class members, are barred in whole or in part, by the economic loss doctrine.

7. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by inability to prove an association-in-fact enterprise.

8. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by inability to prove the existence of at least two predicate acts of racketeering activity.

9. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by inability to prove a concrete financial loss.

10. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by inability to prove that any damages allegedly sustained by Plaintiffs and/or the putative class members were directly and proximately caused by Defendants.

11. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by failure to mitigate damages.

12. Plaintiffs' claims, and/or the claims of the putative class members, are barred,

in whole or in part, because Plaintiffs did not rely on any representation or omission by Defendants.

13. To the extent that Defendants made any representation that was untrue, which is expressly denied, Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, because Defendants lacked the requisite knowledge of the untruthfulness of such statement or intent to defraud at the time it was made.

14. Plaintiffs' claims, and/or the claims of the members of the putative class, for damages are barred in whole or in part by the terms of the Wata Services Agreement.

15. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by Wata's compliance with all of its contract obligations.

16. Plaintiffs' damages, and/or the damages of the members of the putative class, if any, are subject to an offset in the amount of any income from the sale of games graded by Wata.

17. Plaintiffs' claims, and/or the claims of the putative class members, are barred, in whole or in part, by the equitable doctrines of waiver, ratification, estoppel, latches, and/or unclean hands.

18. Any damages allegedly sustained by Plaintiffs and/or the putative class members were caused or contributed to by the negligence of persons, firms, corporations, or entities other than Defendants, and such negligence of third parties bars recovery or reduces the percentage of fault, if any, of Defendants.

19. Any damages allegedly sustained by Plaintiffs and/or the putative class members were directly and proximately caused by the superseding, intervening acts and/or omissions of

third parties over whom Defendants had no control and for who Defendants are neither responsible nor liable.

20. Any damages allegedly sustained by Plaintiffs and/or the putative class members were legally and proximately caused or contributed to by the negligence, comparative fault, assumption of risk, consent, negligence *per se*, or other culpable conduct of the Plaintiffs and/or the putative class members.

21. Any claim of revocation of acceptance or for a full refund of Wata services is barred, in whole or in part, by Plaintiffs and/or the putative class members receiving graded and encapsulated video games and either retaining them or selling them.

22. Plaintiffs' claims and/or the claims of the members of the putative class fail to state a claim for punitive damages as a matter of law.

23. Plaintiffs' claims and/or the claims of the members of the putative class for punitive damages are barred because Defendants did not engage in any conduct that would support an award of punitive damages.

24. Plaintiffs' claims and/or the claims of the members of the putative class would violate Defendants' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and similar provisions of applicable state constitutions, statutes, and case law.

25. Plaintiffs' claims, and/or the claims of the members of the putative class, for equitable relief are barred, in whole or in part, by the existence of an adequate remedy at law and to the extent that the Plaintiffs lack a future intent to purchase Wata's grading and encapsulation services.

26. Plaintiffs' claims, and/or the claims of the putative class members, are barred in whole or in part by the doctrine of accord and satisfaction.

27. Defendants are entitled to, and claim the benefit of, all defenses and presumptions set forth in or arising under any rule of law or statute in this State and/or any other statute that may be applicable.

## JURY DEMAND

Defendants hereby demand a jury trial for all claims found to be triable. Wherefore, Defendants pray that:

1. Plaintiffs take nothing by way of their Third Amended Complaint;
2. Defendants be awarded their costs of suit;
3. Defendants be awarded reasonable attorneys' fees; and
4. For such other and further relief as the Court deems just and proper.

Dated: November 3, 2023

Respectfully submitted,

*/s/ Jonathan D. Parente*
***Jonathan D. Parente***
***Jason Rottner***
***Troy Stram***
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
E-mail: jonathan.parente@alston.com
jason.rottner@alston.com
troy.stram@alston.com

***Christopher H. Toll***
***Alexandra E. Pierce***
HOLLAND & HART LLP
555 17th Street, Suite 3200
Tel: (303) 295-8000
E-mail: ctoll@hollandhart.com
apierce@hollandhart.com

Counsel for Defendants
Wata, Inc. and Collectors Universe, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I have caused to be electronically filed the foregoing Answer with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jonathan D. Parente*
Jonathan D. Parente
ALSTON & BIRD LLP
*Counsel for Defendants*